No. 24,229.

FRANCIS B. ROPER, *Appellant*, v. THE COLUMBIAN CIRCLE, *Appellee*.

SYLLABUS BY THE COURT.

1. FRATERNAL INSURANCE — *Merger of Beneficiary Societies — Reinsurance — Measure of Obligation of Reinsuring Society.* Where there is a merger of fraternal beneficiary societies by which members of one are reinsured in the other in pursuance of the statute authorizing such a merger, the obligation of the society reinsuring the members of the other is measured by the terms of the contract of reinsurance and not by the benefits which the society whose members were reinsured had previously agreed to pay.

2. SAME. The statute authorizing merger of such societies provides for the continuance of the insurance of the merged companies but does not forbid a change of assessments or the graduation of the benefits in accordance with the assessments paid, following *Williams v. Insurance Union*, 107 Kan. 214, 191 Pac. 291.

Appeal from Shawnee district court, division No. 2; GEORGE H. WHITCOMB, judge. Opinion filed April 7, 1923. Affirmed.

*Stephen H. Allen, Otis S. Allen, George S. Allen,* and *T. D. Humphreys,* all of Topeka, for the appellant.

Roper v. Columbian Circle.

*A. M. Harvey,* and *Ralph T. O'Neil,* both of Topeka, for the appellee; *William H. Beckman,* of Chicago, Ill., of counsel.

The opinion of the court was delivered by

JOHNSTON, C. J.: This was an action to recover $1,425 upon a benefit certificate issued by The Sons & Daughters of Justice, a fraternal beneficiary society. On March 16, 1899, Mary Roper obtained a benefit certificate in that society naming her husband as her beneficiary, in which regular assessments were fixed at $1.25, and which gave her the right to participate in the beneficiary fund to an amount not exceeding $2,000. The rates of assessment were changed from time to time until the regular monthly assessment was $5 per month with some special assessments to the local councils. The assessments on the Roper certificate were all paid and she was in good standing at the time of her death, which occurred on October 29, 1920. It appears that the financial conditions of the society became so impaired that it was unable to meet its financial obligations, and on August 17, 1920, a receiver was appointed, on the ground of insolvency, at which date the receiver took charge of all the assets and affairs of the society. On September 10, a contract of insurance was made in which the Columbian Circle, a beneficiary association organized under the laws of Illinois, agreed to insure the living members of the several classes of the Sons & Daughters of Justice. The reinsurance was brought about under the supervision of the court and was to become effective upon the approval of the insurance departments of Kansas and Illinois. The approval of both departments was obtained, and on October 22, 1920, the court which appointed the receiver entered judgment ratifying the contract and directing the receiver to turn over the property and assets of the Sons & Daughters of Justice to the defendant Circle. One week later Mary Roper died, at which time the re-rating of the assessments and benefits for members of the Sons & Daughters of Justice insured in the Columbian Circle had not been made. Shortly after her death the officers of the defendant society calculated the amount of benefits to which she was entitled under the reinsurance contract and determined it to be the sum of $504.03, and notified the plaintiff that he was entitled to that amount. The plaintiff accepted the payment and signed the receipt acknowledging payment in full of the benefit due and delivered the certificate to the defendant. He claimed that he accepted payment upon the advice of an officer of the insurance department to the effect that

he could accept a part of the money and recover the remainder. On his behalf it is contended that under the certificate he was entitled to $2,000 from the defendant, that the release, if it can be treated as one, was without consideration and the receipt of a portion of it did not bar him from collecting the balance due upon the certificate. At the close of the testimony the trial court directed a verdict in favor of the defendant, and plaintiff has appealed.

Much attention has been given in the briefs and arguments as to whether the payment made by defendant and the release given by the plaintiff amounted to an accord and satisfaction of a disputed claim. Back of that, however, is the contract of reinsurance, under which the liability of the defendant must be measured. Whatever the liability of the Sons & Daughters of Justice might be, if it was a going organization and without regard to what might have been derived from an assessment of the members of that insolvent society, the only right which plaintiff has against the defendant Circle is the enforcement of the obligations which it assumed in the reinsurance contract. These obligations are stated in the following quoted provisions of the contract. After reciting that the party of the second part, the Sons & Daughters of Justice, through adverse circumstances found itself in the hands of a receiver, and that the party of the first part, the defendant, had agreed to reinsure the living members of the party of the second part on the following terms and conditions:

"That the party of the first part will take over the receipts and assets of The Sons & Daughters of Justice and will apply the same to the liquidation of every existing valid claim against the said Sons and Daughters of Justice; and in the event of a deficiency in the receipts and assets of the said The Sons and Daughters of Justice to meet the valid existing claims, the party of the first part will supply the deficiency from its treasury.

"That the party of the first part shall, and it hereby agrees to reinsure, without medical examination, The Sons and Daughters of Justice and each and every member of Class A, and will re-rate them and each of them at their attained ages, at rates based on the American Experience Tables of Mortality with an interest assumption of four per cent; and those class A members electing to pay their present contributions or assessment rates shall receive benefits in the proportion of their contributions to the rates based on the American Experience Tables of Mortality, with an interest assumption of four per cent with no liens charged against their benefit certificates and will give all members options to transfer without medical examinations to any of its rate tables that are based on the American Experience Tables of Mortality."

It is further provided that when the contracts had been approved by the insurance departments, the defendant would employ a force of not less than twenty experienced insurance men for the purpose of explaining to the Sons & Daughters of Justice the plan of re-adjustment and the options of which they might avail themselves. It stipulated that those who were under suspension should have the privilege of reinstating themselves for a period of sixty days after the contract was approved, and that the agreement should become effective upon the signing, ratification and approval thereof.

It is argued that the provisions of the contract placed on defendant the obligation which rested on the society of the Sons & Daughters of Justice, and that at the death of Mary Roper that society was under obligations to pay her beneficiary the sum of $2,000. If there had been no consolidation the plaintiff could have recovered no more than what assessments on the paying members would have produced. That society had reached the stage of insolvency and had lost the control of its business. If the organization had been wound up by the receiver plaintiff could only have received a proportionate share of the assets remaining at the end of liquidation. Probably few members would voluntarily contribute assessments to a bankrupt order which had passed into the control of a receiver, and outside of the money on hand and the office furniture and appliances, the only resources of the society were the funds which might be derived from assessment. The certificate was issued and accepted on the agreement that a member would abide and be governed by all the laws, rules and regulations then in force, and which might thereafter be enacted, and was therefore bound by any reasonable rule or regulation raising rates and limiting the extent her beneficiary would participate in the beneficiary fund through the assessments that were paid. (*Miller v. National Council*, 69 Kan. 234, 76 Pac. 830; *Dey v. Knights & Ladies of Security*, ante, p. 86, 213 Pac. 1066.) The approved contract of reinsurance was substituted for the laws and regulations of the insolvent society, and it provided different rules for assessments and benefits. The statute providing for the consolidation of a weak and faltering society with a solvent one was intended to give protection to members whose insurance might be entirely lost if the society became insolvent and ceased to do business and, as we have seen, the order in question was in that plight. The contract was made under the authority of sections 5418, 5419 and 5420 of the General Statutes

of 1915 and chapter 216 of the Laws of 1919. It is enacted that contracts in pursuance of the statute shall provide for the continuance of the insurance of members of the merging organization, and further that the valid provision in the certificates of members shall be carried out. It is contended that the plaintiff held a contract for the payment of $2,000 and that it was a valid claim which the defendant had contracted to recognize and pay. The statutory requirement that the contract shall provide for the continuance of the insurance of members of the merging societies received consideration in *Williams v. Insurance Union*, 107 Kan. 214, 191 Pac. 291, and it is a controlling authority here. It was there held that the contracts of merger must provide for the continuance of the insurance held by members of the merging companies, but that it was not the legislative intention that the rates of assessments of a merging organization which had been subject to change before the consolidation should not be changed by the terms of the consolidation contract. One of the merging companies may have become unable to stand alone and as in this instance may have been thrown into the hands of a receiver because the assessments made were inadequate and had not been increased. In the opinion it is said:

"But the statute does not say what rate of assessment shall be paid for the insurance that shall be continued. If the purposes of the statute are to be accomplished, it must be conceded that in the merger of fraternal beneficiary societies with inadequate rates the merger contract may provide for a change in the rate of assessment. If the statute will not bear this interpretation, mergers of beneficiary societies that are approaching insolvency cannot successfully be carried into effect. The statute directs that the insurance shall be continued; therefore, the rate of assessment may be increased if necessary. . . . . The contract in the present case, however, provides that the beneficiary shall have that amount of insurance which the assessments paid by him will purchase on the terms named in the contract, which terms are on the same basis as those that must be complied with by the member who desires to continue the full amount of his insurance." (pp. 219, 220.)

The plaintiff's claim was valid and the insurance was kept alive by the contract, but defendant was only bound to the extent provided in the contract for the insurance of the class of the one under consideration, and that was in accordance with the payments which the insured had been making. It was not an unjust provision. To obtain membership in the solvent organization she did not have to undergo another medical examination but was accepted regardless of her age and the condition of her health at the time of the

merger. Under the contract and without regard to the effect of the release executed by the plaintiff, he was entitled to claim no more from the defendant than it had agreed to pay, and that amount having been paid, the court properly directed a verdict in favor of the defendant.

The judgment is affirmed.

(HARVEY, J., not sitting.)